[No. B054142. Second Dist., Div. Two. Jan. 3, 1992.]

KENA BRUTSCH et al., Plaintiffs and Respondents, v.
CITY OF LOS ANGELES et al., Defendants and Appellants.

## COUNSEL

James K. Hahn, City Attorney, Frederick N. Merkin, Assistant City Attorney, and Patricia A. Kinaga, Deputy City Attorney, for Defendants and Appellants.

Marr & Marchant, Cecil Marr and Diane Marchant for Plaintiffs and Respondents.

## OPINION

**GATES, Acting P. J.**—Defendants City of Los Angeles (City), members of the board of civil service commissioners and general manager of the personnel department appeal from that portion of the judgment granting plaintiffs' petition for a peremptory writ of mandate directing defendants "immediately upon service of this writ and at all times thereafter, to permit any sworn member of the Los Angeles Police Department of the rank of Lieutenant and below who so requests to see the three-page form denominated 'interviewer's worksheet,' that pertains to the requesting employee's oral interview portion of his or her promotional examination. Such right does not extend to notes made by the interviewer on separate sheets or to sample questions prepared in advance for use by the interviewers."

Plaintiffs were among 239 candidates taking a competitive promotional examination for the position of police lieutenant. The exam included a written test consisting of multiple choice and essay questions and an interview. The written tests were administered in December 1987, and the interviews were held in March 1988.

In a notice dated April 13, 1988, plaintiffs received their "final general average" for the examination and were advised they could review their test results until April 19. Disappointed with their interview scores, plaintiffs each met separately with a personnel department exam analyst to discuss their respective scores. In accordance with personnel department policy the analyst verbally summarized the written remarks entered on the rating sheets by the members of the interview board without disclosing which interviewer made which comment. She refused to allow plaintiffs to examine their individual files or the interviewers' worksheets they contained.

Plaintiffs subsequently filed suit and moved for a peremptory writ of mandate to compel defendants to give candidates access to their own "promotional examination papers." Defendants objected to disclosure of the rating sheets on two grounds: (1) the raters had been told their comments would be confidential; and (2) the interview portion of the examination "would no longer be competitive" if disclosure were required. In response to the latter representation and defendants' inability to reveal "the exact details of the rating sheets" without rendering the subject matter of the hearing moot, the court agreed to undertake a personal review of the documents in camera.

When defendants produced the interviewers' worksheets for the court's inspection, they also asked that two experts be allowed to explain in camera

how the forms are used and how their disclosure would adversely affect the integrity and effectiveness of the exam process. Regrettably, the court rejected this request.

In granting plaintiffs' disclosure motion, the court concluded: "To the extent that the petition seeks to compel [defendants] to permit an employee to inspect the rating sheets that have been used to determine his or her qualifications for promotion, it does not seek the production of 'testing materials' as that term is used in the authorities cited by [defendants], nor does it seek the production of anything, the confidentiality of which needs to be protected as a matter of public policy. Indeed since oral summaries of such rating sheets are voluntarily imparted to employees by [defendants], the court is unable to ascertain any rational reason why [defendants] refuse[] to let the employees see the rating sheets themselves. [Plaintiffs] have a right to inspect such rating sheets under § 1198.5 of the Labor Code.[1] Such right extends only to the rating sheets themselves, which are on a three page form denominated, 'interviewer's worksheet.' Such right does not extend to notes made by the interviewer on separate sheets or to sample questions prepared in advance for use by the interviewers."

Defendants thereafter renewed their request to provide an in camera explanation of the rating sheets, submitting the declaration of the City's chief personnel analyst, who is charged with supervising and managing the development and administration of the City's civil service examinations, as well as maintaining the security and confidentiality of the examination materials. She averred, as follows:

". . . The Civil Service examination process is administered and controlled by the Personnel Department under the direction of the Civil Service Commission. The examination materials are maintained by class title in confidential files in the Personnel Department. The materials on candidates' performance on examinations are maintained in the confidential files, and are maintained in those files until they can be legally destroyed.[2] Such materials are never placed in an employee's personnel file.

". . . To be effective, examination material must remain secure and confidential. The manner in which we test is one of sampling knowledges

---

[1]Labor Code section 1198.5 states in pertinent part: "(a) Every employer shall at reasonable times, and at reasonable intervals as determined by the Labor Commissioner, upon the request of an employee, permit that employee to inspect such personnel files which are used or have been used to determine that employee's qualifications for employment, promotion, additional compensation, or termination or other disciplinary actions."

[2]Defendant City, "by its own rules, maintains files containing the 'examination papers of each candidate' for a period not to exceed six months."

and abilities. The sampling concept is based on the idea that if a candidate knows the correct answer to the questions asked, then the candidate also knows related information. *If the candidate has access to the rating standards evaluated in an oral interview, the sampling concept is no longer valid, and the evaluation would no longer measure the candidate's abilities in relation to the job.* If a candidate has advance knowledge as to the rating standards, the candidate would have an opportunity to embellish or even fabricate his/her background. The Personnel Department does not have the resources to verify the veracity of a candidate's statements.

". . . I would be better able to explain the concepts expressed above [] during an *in camera* examination using the actual rating sheets.

". . . Interview raters are selected based upon their knowledge of the positions to be evaluated. Usually they supervise the positions or have an extensive understanding of the responsibilities of the positions for which candidates are being examined. In order to ensure that the raters are honest and candid in their evaluations, candidates' scores are not connected to any one rater and the raters' comments are paraphrased when presented to candidates. Raters are briefed prior to all interviews that their comments and notes will remain confidential. This practice allows the raters to be candid without apprehension of being harassed by candidates who may disagree with the evaluations of the examiners. Disclosure of the rating sheets, which contain the interviewers' initials and handwriting, would greatly violate these confidentiality purposes.

". . . The Civil Service examination process involves approximately 90,000 applications each year. This past year, the City administered over 30,000 interviews as part of the Civil Service examination process.

". . . Disclosure of the raters' sheets to any candidate would disrupt the entire Civil Service selection examination system for the City of Los Angeles. Such disclosure would make it difficult to obtain interview raters and would require the redesign of the rating sheets each time the interviews are administered, at great public expense." (Italics in original.)

Without responding to defendants' request for an opportunity to present an explanation of the rating sheets, the trial court entered judgment on August 27, 1990, and the instant appeal ensued. We agree that the judgment must be reversed insofar as it orders issuance of a peremptory writ of mandate permitting promotional candidates, including plaintiffs, to see their own rating sheets.

The parties dispute, as they did below, the applicability of the state Public Records Act (Gov. Code, § 6250 et seq.) to the facts of this case. This

legislative enactment is of interest here only insofar as it denies public access to personnel records, at least where an unwarranted invasion of personal privacy would occur, and to test questions, scoring keys and other examination data. (Gov. Code, § 6254, subds. (c) and (g). Cf. also L.A. Admin. Code, § 12.21, subsecs. (c) and (g); 5 U.S.C. § 552(b)(6), (b)(2).)

■ Of course, Labor Code section 1198.5 gives City employees greater access to their own personnel files than is available to the public in general. Nevertheless, these expanded rights do not extend to testing materials. Therefore, if defendants are correct in their assessment of the rating sheets, the worksheets cannot be made available even to police department examinees such as plaintiffs. Their disclosure to anyone other than those responsible for developing, securing and administering them would seriously compromise the integrity of the City's civil service evaluation process. (See *Detroit Edison Co.* v. *NLRB* (1979) 440 U.S. 301, 312-317 [59 L.Ed.2d 333, 345-348, 99 S.Ct. 1123]; *NTEU* v. *U.S. Customs Service* (D.C. Cir. 1986) 802 F.2d 525.)

Our own unguided examination of the rating sheets, when considered in conjunction with the evidence offered by defendants in open court, suggests the challenged documents might possibly constitute "testing materials," rather than the type of data that belongs in a personnel file. Certainly, defendants' showing was sufficient to entitle them to an in camera hearing of a type that would permit the issue to be fully explored. (Evid. Code, §§ 915, subd. (a), 1040.) Although the trial court did undertake to examine the documents on its own, it did so without the benefit of any explanatory enlightenment provided by experts in the testing field, the very type of information necessary to an understanding of defendants' claims and a determination of their validity. This constituted an abuse of discretion and requires a remand for further consideration of the matter on its merits.

However, regardless of what may ultimately be decided concerning the proper characterization of the rating sheets in general, defendants cannot be required to give these plaintiffs access to the documents produced during their specific examinations or to provide them with a verbatim transcription of their interviewers' comments. Defendants have a legitimate interest in protecting the privacy of the interviewers. (See e.g., *Johnson* v. *Winter* (1982) 127 Cal.App.3d 435, 438-439 [179 Cal.Rptr. 585] [matters obtained in the course of sheriff's department investigation of job applicant with understanding of confidentiality not subject to disclosure]; *Board of Trustees* v. *Superior Court* (1981) 119 Cal.App.3d 516, 529-533 [174 Cal.Rptr. 160] [faculty member entitled to discovery of personnel file, subject to appropriate safeguarding of rights of privacy of those furnishing information concerning his qualifications for employment, promotion, additional compensation, or termination].) Although plaintiffs have not contended otherwise, they

did urge below that the City could "redact the name of the commentor [*sic*] by blacking it out or using initials or code letters or anything else . . . ."

Unfortunately, plaintiffs' proposed solution is inadequate for at least three reasons. The comments on plaintiffs' worksheets are in the individual rater's own handwriting. Since many of the interviewers work for the police Department, plaintiffs may recognize their writing. In addition, it is possible the wording of some of the comments would in and of itself provide a clue to the drafter's identity. Too, while certain examiners made use of separate sheets of paper to record their candid observations, documents which the court held could be preserved from view, others recorded them directly on the form itself, presumably in reliance upon the promised confidentiality.

Of course, withholding these particular completed forms would not preclude defendants from meeting the requirements of Labor Code section 1198.5, should it be found to apply, by apprising plaintiffs of the substance of the comments in summary form. However, this has already occurred.

■ Insofar as plaintiffs assert the judgment "could also be upheld on the alternative grounds specified in Government Code § 3305," we disagree. That section treats with the entry in a public safety officer's "personnel file, or any other file used for any personnel purposes by his employer" of "any comment adverse to his interest." Clearly the section relates to information which might affect the status of an officer's employment, e.g., charges of police brutality (*Aguilar* v. *Johnson* (1988) 202 Cal.App.3d 241, 249-251 [247 Cal.Rptr. 909]), and not to unfavorable comments made in connection with a promotional examination.

The judgment is reversed and the cause is remanded for further proceedings consistent with the views set forth herein. Defendants are entitled to their costs on appeal.

Nott, J., and Hart, J.,* concurred.

Respondents' petition for review by the Supreme Court was denied March 19, 1992.

---

*Judge of the Municipal Court for the Los Angeles Judicial District sitting under assignment for the Chairperson of the Judicial Council.