119 Cal.Rptr.2d 176 (2002)
97 Cal.App.4th 1251
TICKET TRACK CALIFORNIA, INC., et al., Plaintiffs and Respondents,
v.
DEPARTMENT OF MOTOR VEHICLES et al., Defendants and Appellants.
No. C037282.
Court of Appeal, Third District.
April 25, 2002.
Review Granted July 31, 2002.
*178 Bill Lockyer, Attorney General, James Schiavenza and Jacob Appelsmith, Supervising Deputy Attorneys General, Barbara J. Seidman, Christopher E. Krueger and John A. Bachman, Deputy Attorneys General, for Defendants and Appellants.
Downey, Brand, Seymour & Rohwer, William R. Warne, Orange, and Laura M. Rojas for Plaintiffs and Respondents.
*177 DAVIS, J.
In this appeal, we construe Vehicle Code section 1808.22, subdivision (c) (section 1808.22(c)).[1] Pursuant to that statute, an attorney may obtain from the Department of Motor Vehicles (DMV) an otherwise confidential residential address of a vehicle owner or driver when necessary to represent a client in a pending or potential action that directly involves the use of the vehicle. The attorney at issue in this appeal represents a collection agency for parking garages. We conclude that the attorney may obtain from DMV the confidential residential addresses of those relevant owners and drivers who fail to pay their parking charges, but may not transfer or disclose that information to the collection agency. We therefore affirm in part and reverse in part.

BACKGROUND
The relevant facts are undisputed.
Ticket Track California, Inc. (Ticket Track) pursues unpaid charges for parking garages and lots, after the garage or lot has unsuccessfully demanded payment.
While the great majority of parking patrons pay these charges without judicial intervention, Ticket Track at times has had to use a small claims court action to collect from a few recalcitrants. In August 2000, Ticket Track retained attorney Robert Pohls (Pohls) regarding potential legal actions involving the collection of unpaid parking charges.
In October 2000, Pohls, "in [his] individual capacity, as counsel for Ticket Track[ ]," submitted an application for a commercial requester account from DMV. Upon approval of an application, DMV issues a code, which allows an individual or organization to obtain information from DMV's files.[2] On a form supplied by DMV, Pohls declared under penalty of perjury that he was seeking residential address information for the "investigation of potential civil claims or causes of action *179 involving unpaid parking charges directly resulting from the use of a motor vehicle."
As part of the application process, Pohls also submitted a letter to DMV dated October 23, 2000, explaining that he planned "to use the requester code for a limited purpose: to obtain the names and addresses of those individuals who have refused to pay parking charges to [Ticket Track's] assignors." In this letter, Pohls continued: "Once I obtain those names and addresses, I plan to forward that information to [Ticket Track] so that it can proceed with its efforts to collect those unpaid parking charges. While such efforts generally succeed without the need to initiate a civil action, [Ticket Track's] initial effort to collect these unpaid charges constitutes a demand letter, which marks the first step towards initiating a civil action in small claims court to enforce the collection of these charges. As set forth in my application, then, [Ticket Track] and I will use the information obtained from your office to investigate and, if necessary, pursue a potential civil action for unpaid parking charges."
DMV denied attorney Pohls's application for a requester account and code.
Pohls and Ticket Track, relying on the attorney exception to residential address confidentiality set forth in section 1808.22(c), then successfully petitioned for a writ of mandate against DMV and its information services branch chief, Peggy St. George; this allowed Pohls to obtain a DMV requester code for residential addresses under the circumstances described above. (We will refer to DMV and St. George collectively as DMV.)
DMV then appealed the judgment granting the writ of mandate.

DISCUSSION
This appeal involves the task of construing section 1808.22(c) against a backdrop of undisputed facts. This task presents a question of law which we determine independently on appeal.[3]
"The objective of statutory interpretation is to ascertain the Legislature's intent to effectuate the law's purpose. In determining intent, we look first to the statute's words and give them their usual and ordinary meaning. When the language is unambiguous, there is no need for judicial construction. When the language is susceptible of more than one reasonable interpretation, however, we look to a variety of extrinsic aids, including the statutory scheme of which the statute is a part" and the legislative history.[4]
Before we turn to section 1808.22(c), we need to set forth two statutes for context. Section 1810.2(a) allows DMV to issue requester codes to individuals or organizations for the purpose of obtaining information from DMV's files, except as prohibited by section 1808.21.
Section 1808.21, subdivision (a) states in part: "Any residence address in any [DMV] record ... is confidential and shall not be disclosed to any person, except a court, law enforcement agency, or other government agency, or as authorized in Section 1808.22
With these two statutes in mind, section 1808.22(c) provides:
"(c) Section 1808.21 does not apply to an attorney when the attorney states, under *180 penalty of perjury, that the motor vehicle or vessel registered owner or driver residential address information is necessary in order to represent his or her client in a criminal or civil action which directly involves the use of the motor vehicle or vessel that is pending, is to be filed, or is being investigated. Information requested pursuant to this subdivision is subject to all of the following:
"(1) The attorney shall state that the criminal or civil action that is pending, is to be filed, or is being investigated relates directly to the use of that motor vehicle or vessel.
"(2) The case number, if any, or the names of expected parties to the extent they are known to the attorney requesting the information, shall be listed on the request.
"(3) A residence address obtained from [DMV] shall not be used for any purpose other than in furtherance of the case cited or action to be filed or which is being investigated.
"(4) If no action is filed within a reasonable time, the residence address information shall be destroyed.
"(5) No attorney shall request residence address information pursuant to this subdivision in order to sell the information to any person.
"(6) Within 10 days of receipt of a request, [DMV] shall notify every individual whose residence address has been requested pursuant to this subdivision."
Thus, section 1808.22(c) constitutes an exception for attorneys to the general rule of section 1808.21 that makes residential addresses in DMV files confidential. In interpreting this exception, there are some rules of statutory construction to follow. When a statute sets forth an exception to a general rule, that exception is to be strictly construed; other exceptions are not to be implied or presumed.[5] Moreover, the enumeration of acts, things, or persons as coming within the exception of a statute forecloses the inclusion of other acts, things, or persons in the class.[6] However, a statutory exception is not to be construed so narrowly as to exclude situations that are "`within the words and reason of the exception,'" "or that `"fall fairly within its terms."'"[7]
Two issues of interpretation are presented here. The first is whether attorney Pohls is representing Ticket Track in an action within the meaning of the section 1808.22(c) exception. The second is, if so, whether Pohls may transfer or disclose the confidential DMV residential address information to Ticket Track as his client. The parties agree that the failure to pay vehicle parking charges "directly involves the use of the motor vehicle."
As for the first issuewhether attorney Pohls is representing Ticket Track in an actionDMV maintains the section 1808.22(c) attorney exception does not apply because Pohls is not "represent[ing]" Ticket Track in an action "that is pending, is to be filed, or is being investigated." Instead, DMV argues, the so-called representation involves only the mailing of parking *181 bills, punctuated once in a great while by a small claims court action from which Pohls is foreclosed by statute from representing Ticket Track. We disagree.
If attorney Pohls, as counsel for Ticket Track, obtains confidential DMV residential address information for an unpaid parking charge and sends a demand letter for payment, that activity involves the representation of Ticket Track in a potential action that directly involves the use of the motor vehicle. Such activity falls within the representational requirement of the section 1808.22(c) attorney exception, which provides as pertinent: "[T]he attorney states ... that the ... residential address information is necessary in order to represent his or her client in a ... civil action which directly involves the use of the motor vehicle ... that is pending, is to be filed, or is being investigated." As the State Farm court put it, the section 1808.22(c) exception "permits attorneys to seek information while a civil action `is being investigated,' before the facts and the precise claims to be filed in the action are fully known. [Citation.] The exception thus authorizes the release of address information in situations in which an attorney is investigating a potential claim or cause of action `which directly involves the use of the motor vehicle ....'"[8]
And while it is true that an attorney may not appear on behalf of a client in small claims court, an attorney may advise a small claims client before or after the action is begun, and may appear and represent that client in a small claims appeal (which is a de novo hearing in superior court) or in connection with the enforcement of a judgment.[9]
We conclude that attorney Pohls is representing Ticket Track in at least a potential action within the meaning of the section 1808.22(c) attorney exceptionif he sends out demand letters for payment using confidential DMV residential address information, while investigating or generally overseeing payment compliance and, if necessary, advising on small claims actions for the recalcitrants.
The concurring and dissenting opinion (dissent) disagrees with this interpretation of the section 1808.22(c) attorney exception. Focusing on the preposition "in," the dissent reads the exception's qualification"the ... residential address information is necessary in order to represent his or her client to a ... civil action ... that is pending, is to be filed, or is being investigated"to mean that the actual or potential civil action must be one "in" which the attorney "can appear" to represent a client.
We find the dissent's interpretation too restrictive. The language at issue in section 1808.22(c) says nothing about releasing residential address information only to attorneys for civil actions "in" which they "can appear"; in fact, the language plainly extends to a potential civil action in which an attorney is "representing" a client by "investigating" the matter.[10] As the legislative history shows (not to mention the legislative language), investigation is a central feature of the section 1808.22(c) attorney exception; this feature allows attorneys to effectively represent their clients by locating hit and run drivers or other responsible parties involved in auto accidents *182 or auto-related matters.[11] Moreover, an investigation may disclose myriad reasonsfor example, no claim, no defense, settlement, or a small claims matterthat foreclose an actual "appearance" by an attorney. That leaves the dissent's interpretation of when the section 1808.22(c) exception applies hanging by the theoretical thread that an attorney could have "appeared" in the potential action, even though the attorney did not appear. That interpretation finds no support in the language of the statute.
The section 1808.22(c) attorney exception uses the broader verb "represent" rather than the more limited verb "appear," and does so while contemplating the importance of attorney investigation. The exception does not say the residential address information is "necessary in order to appear for his or her client in a civil action," or "in order to represent his or her client by appearing in a civil action," that is pending, is to be filed, or is being investigated. The exception simply says the "information is necessary in order to represent his or her client in a ... civil action ... that is pending, is to be filed, or is being investigated." In short, the language of the exception extends to representation through investigation, but the dissent's interpretation is confined to whether the attorney has appeared, will appear, or can appear in the action.
The problems with the dissent's restrictive interpretation of the section 1808.22(c) exception do not stop with these language incongruities. They extend to practical incongruities as well. Under the dissent's interpretation, an attorney cannot use the section 1808.22(c) exception in investigating a potential small claims action because attorneys cannot appear in the initial small claims trial.[12] However, that same attorney, investigating that same case, may use the section 1808.22(c) exception by bypassing the small claims court and characterizing the action being investigated as a limited civil case, because attorneys may appear in limited civil cases.[13] Furthermore, attorneys may appear on behalf of a client in a small claims appeal (a de novo hearing in superior court), and therefore they can "use" the section 1808.22(c) exception, under the dissent's interpretation, at that belated moment.[14] These incongruities disserve the lawyer, the client and the court system.
Our interpretation avoids these incongruities, and allows attorneys to use the section 1808.22(c) exception to investigate potential small claims actions like the potential civil actions that they are.[15] Under our interpretation of the section 1808.22(c) exception, attorney Pohls's DMV declaration was sufficient in stating that he needed the residential address information to investigate, and if necessary, to pursue potential civil actions on behalf of his client involving unpaid parking charges directly resulting from the use of a motor vehicle.
As for the second issue before us whether attorney Pohls may transfer or disclose the confidential DMV residential address information to his client, Ticket Trackwe must once again look to the language of section 1808.22(c). That section states in relevant part that the general *183 rule of confidentiality set forth in "[s]ection 1808.21 does not apply to an attorney when the attorney states, under penalty of perjury, that the ... residential address information is necessary in order to represent his or her client ...."
This language is plain. The confidentiality exception applies "to an attorney." (Italics added.) It does not apply to the attorney's client. Attorneys, then, have been enumerated as coming within the exception. Since additional exceptions are not to be implied or presumed, section 1808.22(c) contemplates that DMV residential addresses are only for the eyes of attorneys (and, as we shall see, their agents) who meet the criteria of that section.[16]
Lest there be any doubt about this, companion provisions to section 1808.22 and section 1808.22 itself, as well as the section's legislative history, dispel any anxiety.
As for the companion provisions, section 1808.47 states in part that "[a]ny person who has access to confidential or restricted information from [DMV] shall establish procedures to protect the confidentiality of those records. If any confidential or restricted information is released to any agent of a person authorized to obtain information, the person shall require the agent to take all steps necessary to ensure confidentiality and prevent the release of any information to a third party." Ticket Track cannot consider itself to be attorney Pohls's agent. An "agent" is defined legally as one who is authorized by a party to act on that party's behalf.[17] Here attorney Pohls is acting on Ticket Track's behalf and is therefore Ticket Track's agent, not the other way around.
Section 1808.46 adds in part that "[n]o person or agent shall ... distribute restricted or confidential [DMV] information to any person ..."; the section sets forth a stiff penalty for such distribution.
Section 1808.22(c) itself places conditions on an attorney's request for DMV residential address information that indicate the attorney is to keep such information within his or her domain. Most notably, those conditions specify that "[i]f no action is filed within a reasonable time, the residence address information shall be destroyed," and that "[n]o attorney shall request residence address information ... in order to sell the information to any person." [18] A knowing violation of these conditions is a misdemeanor.[19]
Furthermore, subdivisions (a) and (b) of section 1808.22, subdivisions (a) and (b) of section 1808.23, and subdivision (a) of section 1808.25 specifically exempt certain entities from the section 1808.21 general rule making DMV residential address information confidential. These specifically exempted entities are private colleges (enforcing their parking restrictions), financial institutions, insurance companies, and vehicle manufacturers and dealers, if they meet certain statutory criteria. If we were to approve of the transfer of confidential DMV residential address information from attorney Pohls to Ticket Track here, that would mean that motor vehicle-related collection agencies routinely would obtain this confidential information from their attorneys. In effect, we would be *184 creating another exception for a specific business. That is not our job. That is a task for the Legislature.
The legislative history of the section 1808.22(c) attorney exception discloses that the exception was tightened considerably from its originally proposed language, which read: "(c) Section 1808.21 does not apply to an attorney when the attorney states, under penalty of perjury, that the information is necessary in order to effectively represent his or her client."[20] This tightening no doubt reflected, at least in part, the privacy-focused legislative findings that accompanied the adoption of the section 1808.21 confidentiality scheme. Those findings noted that the "California Constitution guarantees the right to privacy"; and stated that the "personal privacy and security of one's home is fundamental to this right of privacy," and that "[i]n order for individuals to be able to exercise their right to privacy, they must be able to choose when to release personal information, and to whom, and reasonable laws requiring the individual to surrender control should be enacted only when it is deemed absolutely necessary for society's welfare."[21]
Ticket Track notes that the section 1808.22(c) exception applies to attorneys seeking information "in order to represent his or her client ...." Such language, Ticket Track maintains, "anticipates and assumes that attorneys who obtain ... address information from the DMV are working in a representative capacity and will necessarily be communicating with their clients about the information obtained."
Ticket Track's argument, however, treats the DMV residential address information as routine information between attorney and client, and not as statutorily restricted confidential information that only the attorney and the attorney's agent may see. As DMV points out, it is not integral to the attorney-client relationship that the client know the residential address of an opposing party. It is safe to say that a client's ignorance in this respect is generally the wisest course in an adversarial milieu. As DMV also notes, attorneys may withhold information from their clients when legally required to do so.[22] One treatise on professional responsibility states that laws or court orders "may prohibit counsel from disclosing information to the client (e.g., trade secrets, customer lists, etc.)."[23] Confidential residential addresses are akin to these prohibited disclosures; if anything, the disclosure of residential addresses of opposing parties would generally seem less important to furthering a lawyer-client relationship than the disclosure of more substantive trade secrets or customer lists. As we read the confidentiality exception of section *185 1808.22(c), attorneys are legally required to withhold DMV residential address information from their clients because the exception applies only to attorneys and their agents.
We conclude that only attorney Pohls (or his agent) may receive the confidential DMV residential address information; neither Pohls nor his agent may transfer or disclose this information to Ticket Track.
The judgment here specifies that DMV is to grant attorney Pohls a requester code as permitted under section "1808.22(c), which authorizes the release of residential address information under the circumstances presented by th[e] petition [for writ of mandate]." One of those circumstances is that attorney Pohls obtains the confidential DMV residential address information and forwards that information to Ticket Track; Ticket Track then sends out a demand letter for payment. In light of our analysis, this aspect of the judgment must be reversed because only attorney Pohls or his agent may see the confidential DMV residential address information.

DISPOSITION
The judgment is reversed to the extent it allows attorney Pohls to transfer or disclose the confidential DMV residential address information to his client, Ticket Track. In all other respects, the judgment is affirmed. Each side shall pay its own costs on appeal.
I concur: HULL, J.
Concurring and Dissenting opinion of SIMS, Acting P.J.
For reasons that follow, I respectfully dissent from the majority's conclusion that attorney Robert Pohls was entitled to receive residential addresses from the Department of Motor Vehicles (DMV). Because I do not think that Pohls was entitled to receive any information at all, I necessarily concur in the majority's conclusion that Pohls should not forward that information to Ticket Track California, Inc.
As I shall explain more fully, Pohls was not entitled to the information because he did not provide to DMV, under penalty of perjury, information that is required by Vehicle Code section 1808.22, subdivision (c). (Statutory references are to the Vehicle Code unless otherwise noted.) In short, Pohls supplied DMV with an insufficient application for the information, and DMV correctly denied his application.
At issue is the proper interpretation of section 1808.22, subdivision (c). Before discussing the language of that statute, it may be helpful to set out certain rules of statutory construction that apply in this instance.
"`Our role in construing a statute is to ascertain the Legislature's intent so as to effectuate the purpose of the law. [Citation.] In determining intent, we look first to the words of the statute, giving the language its usual, ordinary meaning. If there is no ambiguity in the language, we presume the Legislature meant what it said, and the plain meaning of the statute governs. [Citation.]' (Hunt v. Superior Court (1999) 21 Cal.4th 984, 1000 [90 Cal. Rptr.2d 236, 987 P.2d 705].) ... Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose. (DuBois v. Workers' Comp. Appeals Bd. (1993) 5 Cal.4th 382, 388 [20 Cal.Rptr.2d 523, 853 P.2d 978].)" (Curie v. Superior Court (2001) 24 Cal.4th 1057, 1063, 103 Cal. Rptr.2d 751, 16 P.3d 166.)
If possible, we must give effect and significance to every word and phrase of a *186 statute. (Garcia v. McCutchen (1997) 16 Cal.4th 469, 476, 66 Cal.Rptr.2d 319, 940 P.2d 906.) We must presume that the Legislature intended every word, phrase, and provision in a statute to have meaning and to perform a useful function. (Ibid.)
"In construing the words of a statute, a reviewing court is required to read the statute in the light of the legislative objective sought to be achieved, and the evil to be averted. [Citation.]" (People v. Fierro (1991) 1 Cal.4th 173, 225, 3 Cal.Rptr.2d 426, 821 P.2d 1302.)
Section 1808.22, subdivision (c) provides an exception to the general rule of confidentiality of residence addresses that is set forth in section 1808.21, subdivision (a) as follows: "Any residence address in any record of the Department is confidential and shall not be disclosed to any person, except a court, law enforcement agency, or other government agency, or as authorized in Section 1808.22 or 1808.23."
Section 1808.22 was enacted by Statutes of 1989, chapter 1213, section 6. In enacting that chapter the Legislature stated in section 1: "The Legislature hereby finds and declares that:
"(a) Section 1 of article I of the California Constitution guarantees the right to privacy.
"(b) In order for individuals to be able to exercise their right to privacy, they must be able to choose when to release personal information, and to whom, and reasonable laws requiring the individual to surrender control should be enacted only when it is deemed absolutely necessary for society's welfare." (Stats.1989, ch. 1213, § 1, p. 4713.)
In light of the foregoing declaration of legislative intent, section 1808.22, which provides for disclosure of private information, must be read narrowly, at least in the sense that its plain language should not be disregarded and that any ambiguities in the statute should be construed in favor of privacy.[1]
With this background, I turn to the language of section 1808.22, subdivision (c). In pertinent part, it provides as follows:
"Section 1808.21 does not apply to an attorney when the attorney states, under penalty of perjury, that the motor vehicle or vessel registered owner or driver residential address information is necessary in order to represent his or her client in a criminal or civil action which directly involves the use of the motor vehicle or vessel that is pending, is to be filed, or is being investigated." (Emphasis added.)
The ordinary meaning of "represent his or her client ma ... civil action" means that the attorney has appeared or will appear in a civil action as the attorney of record representing the client. (See, e.g. Blanton v. Womancare (1985) 38 Cal.3d 396, 403, 212 Cal.Rptr. 151, 696 P.2d 645 [attorney retained to represent client "in litigation"]; Code of Civ. Proc., § 1015 ["... in all cases where a party has an attorney in the action ... the service of papers ... must be upon the attorney ..."].)
In this case, attorney Pohls failed to state under penalty of perjury that the residential address information was necessary in order to represent his client in a criminal or civil action, as the statute plainly requires. Rather, Pohls's application to DMV, executed under penalty of perjury, stated, "Investigation of potential civil claims or causes of action involving unpaid parking charges directly resulting from the use of a motor vehicle." This *187 application simply does not state that the residential information is necessary in order to represent his client in a criminal or civil action. It just does not. It is not there.
This omission is not inadvertent, as Pohls's letter of October 23, 2000, makes clear. Even assuming that the statements in the letter could be considered by DMV, as a part of the application, even though they were not made under penalty of perjury as required by the statute, the letter makes clear that the information was not sought to allow Pohls to represent his client in a criminal or civil action. Thus, Pohls stated, "Once I obtain those names and addresses, I plan to forward that information to my client so that it can proceed with its efforts to collect those unpaid parking charges. While such efforts generally succeed without the need to initiate a civil action, my client's initial effort to collect these unpaid charges constitutes a demand letter, which marks the first step toward initiating a civil action in small claims court to enforce the collection of these charges. As set forth in my application, then, my client and I will use the information obtained from your office to investigate and, if necessary, pursue a potential civil action for unpaid parking charges."
The only civil action identified in the letter is one in small claims court. However, in the circumstances presented on this record, Pohls would be prohibited by Code of Civil Procedure section 116.530 from representing his client in a small claims action.[2] And while it is true, as the majority assert, that an attorney can represent his client in the appeal of a small claims action, Pohls did not declare any such intent, possibly because Ticket Track, as the plaintiff in the small claims action, could not appeal. (See Code Civ. Proc., § 116.710, subd. (a).)
Ticket Track relies strongly on State Farm Mut. Auto. Ins. Co. v. Department of Motor Vehicles (1997) 53 Cal.App.4th 1076, 62 Cal.Rptr.2d 178 for the proposition that an attorney may obtain DMV information, under section 1808.22, subdivision (c) in order to investigate a civil action. It is true an attorney may obtain DMV information to investigate the filing of a civil action. Section 1808.22, subdivision (c) says so. But that does not eliminate the express statutory requirement that the information is necessary to allow the attorney to represent the client "in" an action that might result from an investigation. Thus, in State Farm, there was no suggestion that the contemplated civil action was a small claims action. In fact, the amount at issue in State Farm was apparently $87,654.60. (State Farm, supra, 53 Cal.App.4th at p. 1079, 62 Cal.Rptr.2d 178.) Accordingly, in State Farm, State Farm's counsel, in the application to DMV, certified that the requested information was necessary "to represent [State Farm] *188 in a criminal or civil action, which directly involve[d] the use of the motor vehicle/motorcycle, that is pending, is to be filed, or is being investigated." In short, the application in State Farm expressly stated the information was necessary to represent State Farm in a civil action. Here, Pohls's application simply did not say that.
Thus, in my view, the plain language of section 1808.22, subdivision (c) contemplates that the actual or potential civil action must be one "in" which the attorney can appear to represent a client.
Moreover, as the majority point out, in enacting section 1808.22, the Legislature rejected language that would have allowed an attorney to obtain the DMV information upon an averment "the information is necessary in order to effectively represent his or her client." That language would have allowed Pohls to get the DMV information upon a showing it was necessary in order to counsel his client about a small claims action. However, the Legislature rejected that language and chose to require that the information be necessary to allow the attorney to represent his or her client in a civil or criminal action. Pohls did not make that showing.
This interpretation therefore prohibits attorneys from obtaining confidential information in the vast majority of cases in which a small claims action is contemplated.
I see no reason to disregard the plain language of the statute. From all that appears, the Legislature intended to exclude collection agencies such as Ticket Track from obtaining confidential residence address information for use in small claims court. All collection agencies have attorneys, and the attorneys could routinely obtain DMV information in cases that directly involve the use of a motor vehicle or a vessel. The attorneys could then simply pass on the DMV information to their clients who (as in this case) could write a demand letter and pursue a small claims action. As the majority note, permitting collection agencies routinely to obtain this information, via their attorneys, is inconsistent with the Legislature's express authorization, in subdivisions (a) and (b) of section 1808.22, for the obtaining of this information by financial institutions, insurance companies, vehicle manufacturers and vehicle dealers, but only if they meet certain statutory criteria.
In addition, the result sought by Ticket Track cannot be reconciled with the Legislature's establishment of a pilot program allowing release of confidential DMV information to private institutions of higher learning for the purpose of enforcing parking restrictions as set forth in section 1808.25.[3] In light of the Legislature's express *189 authorization of the pilot program for private institutions of higher learning in section 1808.25, and the various restrictions placed thereon, it is untenable that the Legislature intended that confidential DMV information be obtained routinely by collection agencies to collect parking tickets in small claims actions. If Ticket Track wants the same access to DMV information as financial institutions, insurance companies, vehicle manufacturers, vehicle dealers, and private colleges, Ticket Track's remedy is "on the other side of Tenth Street, in the halls of the Legislature." (Osborn v. Hertz Corp. (1988) 205 Cal.App.3d 703, 711, 252 Cal.Rptr. 613.)
The majority avoid the problem of having collection agencies get the confidential information routinely by concluding that, although attorneys can get the information under section 1808.22, subdivision (c), the attorneys cannot pass the information on to their clients. I think that this result is, frankly, odd.[4] It has been established law for many years that an attorney owes a duty to communicate to his client whatever information he acquires in relation to the subject matter involved in the transaction. (Neel v. Magana, Olney, Levy, Cathcart & Gelfand (1971) 6 Cal.3d 176, 189-190, 98 Cal.Rptr. 837, 491 P.2d 421; Wittenbrock v. Parker (1894) 102 Cal. 93, 101, 36 P. 374.) The Legislature is deemed to be aware of existing law when it enacts a statute. (People v. Weidert (1985) 39 Cal.3d 836, 844, 218 Cal.Rptr. 57, 705 P.2d 380.) Nothing in section 1808.22 suggests that the Legislature intended to create a result at odds with existing law by prohibiting the attorney from sharing the DMV address with his client. Rather, a more plausible construction of the statute is that it contains no restriction on an attorney's sharing information with a client but instead restricts the attorney's access to confidential information to situations where *190 the attorney is appearing or will appear in an action.[5]
In sum, the plain language of section 1808.22, subdivision (c) requires an attorney to state under penalty of perjury that the requested information is necessary in order to represent his or her client in a criminal or civil action. Attorney Pohls did not do so in this case. There is no good reason to disregard this express statutory command, since this exception to DMV privacy must be read narrowly. The majority's construction of the statute reaches a result at odds with existing law related to the attorney/client relationship.
For all the foregoing reasons, I am of the view that DMV had no obligation to disclose any confidential DMV information to attorney Pohls. The trial court erred in concluding to the contrary. Because I do not think Pohls was entitled to any information at all, I must necessarily agree with the majority's conclusion that Pohls should not furnish the information to his client.
NOTES
[1] Undesignated section references are to the Vehicle Code.
[2] Section 1810.2, subdivision (a) (section 1810.2(a)).
[3] Cal-Air Conditioning, Inc. v. Auburn Union School Dust. (1993) 21 Cal.App.4th 655, 667, 26 Cal.Rptr.2d 703; State Farm Mut. Auto. Ins. Co. v. Department of Motor Vehicles (1997) 53 Cal.App.4th 1076, 1081, 62 Cal. Rptr.2d 178 (State Farm ).
[4] Praiser v. Biggs Unified School Dist. (2001) 87 Cal.App.4th 398, 401, 104 Cal.Rptr.2d 551.
[5] City of National City v. Fritz (1949) 33 Cal.2d 635, 636, 204 P.2d 7; People v. Melton (1988) 206 Cal.App.3d 580, 592-593, 253 Cal. Rptr. 661 (Melton); Whaler's Village Club v. California Coastal Com. (1985) 173 Cal. App.3d 240, 258, 220 Cal.Rptr. 2 (Whalers Village Club).
[6] Melton, supra, 206 Cal.App.3d at page 592, 253 Cal.Rptr. 661; see People v. Mancha (1974) 39 Cal.App.3d 703, 713, 114 Cal.Rptr. 392.
[7] State Farm, supra, 53 Cal.App.4th at page 1082, 62 Cal.Rptr.2d 178.
[8] State Farm, supra, 53 Cal.App.4th at page 1081, 62 Cal.Rptr.2d 178.
[9] Code of Civil Procedure sections 116.530, subdivisions (a), (c), 116.770, subdivisions (a), (b), (c).
[10] State Farm, supra, 53 Cal.App.4th at page 1081, 62 Cal.Rptr.2d 178.
[11] See Assembly Committee on Public Safety, Hearing Date Report on Senate Bill No. 1150 (1989-1990 Reg. Sess.) April 17, 1990, page 4.
[12] Code of Civil Procedure section 116.530, subdivision (a).
[13] See Code of Civil Procedure sections 85, 85.1, 86, 87.
[14] Code of Civil Procedure section 116.770, subdivision (c).
[15] See Code of Civil Procedure sections 22, 30.
[16] See 74 Ops.Cal.Atty.Gen. 201, 204, 206 (1991); see also Whaler's Village Club, supra, 173 Cal.App.3d at page 258, 220 Cal.Rptr. 2.
[17] Gifis, Law Dictionary (2d ed.1984) page 16.
[18] Section 1808.22(c)(4), (5); see Review of Selected 1990 California Legislation (1990) 22 Pac. L.J. 323, 756.
[19] Section 1808.22, subdivision (d).
[20] Senate Amendment to Senate Bill No. 1150 (1989-1990 Reg. Sess.) January 24, 1990, Amendment 3, page 1.
[21] Historical and Statutory Notes, 65B West's Annotated Vehicle Code (2000 ed.) following sections 1808.21, 1810, pages 225, 233-234 (legislative findings and declaration for Stats. 1989, ch. 1213).
[22] See e.g., Planned Parenthood Golden Gate v. Superior Court (2000) 83 Cal.App.4th 347, 354, 369, 99 Cal.Rptr.2d 627; Imax Corp. v. Cinema Technologies, Inc. (9th Cir.1998) 152 F.3d 1161, 1168, footnote 9; see also 1 Witkin, California Procedure (4th ed. 1996) Attorneys, section 425, page 520; American Bar Association Annotated Model Rules of Professional Conduct (4th ed.1999), Rule 1.4, Comment 4, page 32; Vapnek et al., California Practice Guide: Professional Responsibility (The Rutter Group 2001), paragraph 3:196, page 3-64, paragraph 6:140, page 6-23.
[23] Vapnek et al., California Practice Guide: Professional Responsibility, supra, paragraph 6:140, page 6-23.
[1] I do not see where the majority comes to grips with this fundamental framework of statutory construction which should govern this case.
[2] Code of Civil Procedure section 116.530 provides as follows:

"(a) Except as permitted by this section, no attorney may take part in the conduct or defense of a small claims action.
"(b) Subdivision (a) does not apply if the attorney is appearing to maintain or defend an action (1) by or against himself or herself, (2) by or against a partnership in which he or she is a general partner and in which all the partners are attorneys, or (3) by or against a professional corporation of which he or she is an officer or director and of which all other officers and directors are attorneys.
"(c) Nothing in this section shall prevent an attorney from (1) providing advice to a party to a small claims action, either before or after the commencement of the action; (2) testifying to facts of which he or she has personal knowledge and about which he or she is competent to testify; (3) representing a party in an appeal to the superior court; and (4) representing a party in connection with the enforcement of a judgment."
[3] Section 1808.25 provides as follows:

"(a) The department shall implement a pilot program to provide residence address information to an accredited degree-granting nonprofit independent institution of higher education incorporated in the state, that has concluded a memorandum of understanding pursuant to subdivision (b) of Section 830.7 of the Penal Code if, under penalty of perjury, the institution requests and uses the information solely for the purpose of enforcing parking restrictions.
"(b) The memorandum of understanding executed by the sheriff or chief of police within whose jurisdiction the independent institution is located shall expressly permit the institution to enforce parking restrictions pursuant to subdivision (b) of Section 830.7 of the Penal Code.
"For the purposes of this subdivision, a participating institution shall enter into a contractual agreement with the department that, at a minimum, requires the institution to do all of the following:
"(1) Establish and maintain procedures, to the satisfaction of the department, for persons to contest parking violation notices issued by the institution.
"(2) Remit a fee, as determined by the department, to cover the department's costs of providing each address to the institution.
"(3) Agree that access to confidential residence address information from the department's vehicle registration database will be provided only through an approved commercial requester account.
"(c) The director may terminate a contract authorized by subdivision (b) at any time the department determines that the independent institution of higher education fails to maintain adequate safeguards to ensure that the operation of the program does not adversely affect those individuals whose records are maintained in the department's files, or that the information is used for any purpose other than that specified in subdivision (a).
"(d) Sections 1808.45, 1808.46, and 1808.47 are applicable to persons who obtain department records pursuant to this section and the department may pursue any appropriate civil or criminal action against any individual at an independent institution who violates the provisions of this section.
"(e) For purposes of this article only, any confidential information obtained from the department for administration or enforcement of this article shall be held confidential, except to the extent necessary for the enforcement of parking restrictions, and may not be used for any purpose other than the administration or enforcement of parking restrictions.
"(f) The department shall submit a report to the Legislature containing its evaluation of the pilot program which shall include a recommendation as to the advisability of continuing the program. The report shall be submitted on or before January 1, 2003.
"(g) This section shall remain in effect only until January 1, 2004, and as of that date is repealed unless a later enacted statute, that is enacted before January 1, 2004, deletes or extends that date."
[4] In a case other than a small claims action, where plaintiff's attorney has obtained defendant's residence address from DMV, can plaintiff's attorney ask the defendant to state his residence address at his deposition, which the plaintiff has a right to attend? (See Willoughby v. Superior Court (1985) 172 Cal. App.3d 890, 892-893, 218 Cal.Rptr. 486.)
[5] 1 suppose the practical effect of the majority's ruling will be that attorneys for collection agencies will have to undertake service of the small claims complaints which will mean more full employment for lawyers.